THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CZS Holdings LLC (d/b/a Pur360), | ) | |
| *Plaintiff*, | ) ) ) | |
| v. | ) ) | |
| Arpad Kolbe and ARKO UV, Inc (d/b/a ARKO Ozone & UV Disinfection), *Defendants*. | ) ) ) ) | No. 20 C 6886 |
| Arpad Kolbe, | ) ) ) | Judge Virginia M. Kendall |
| *Counter-Plaintiff*, | ) ) | |
| v. | ) ) | |
| CZS Holdings LLC (d/b/a Pur360), | ) ) | |
| *Counter-Defendant.* | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff CZS Holdings LLC d/b/a Pur360 ("Pur360") brings suit against its former employee Arpad Kolbe and his new competing business, ARKO UV, Inc d/b/a ARKO Ozone & UV Disinfection ("ARKO") for trade secret misappropriation and breach of contract. Kolbe filed a counter-claim against Pur360 for equitable accounting, breach of contract, and violations of the Illinois Sales Representative Act, 820 ILCS § 120/1. Before the Court are the parties' cross-motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the following reasons,

1

Defendants' motion to dismiss Pur360's complaint [18] is denied and Pur360's motion to dismiss Kolbe's counterclaim [18] is granted.

## BACKGROUND

The following factual allegations are taken from Plaintiff's First Amended Complaint ("FAC") and Defendant Kolbe's counterclaim, respectively, and are assumed true for the purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016); *Cozzi Iron & Metal, Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570, 574 (7th Cir.2001).

### I. Pur360's Complaint

Pur360 develops and manufactures high efficiency ultra-violet (UV) light-based ozone generators for use in eradicating mold, bacteria, viruses, and their resulting odors from commercial and residential properties, a process called property eradication. (Dkt. 14 at ¶ 1). Kolbe served as the regional manager for the Florida region of Pur360 in Tampa, Florida from September 2018 until his resignation on March 6, 2020. (*Id*. at ¶¶ 5, 10, 21). Prior to his employment with Pur360, Kolbe had never worked for a company in the property eradication market. (*Id*. at ¶ 5).

In his role as regional manager, Kolbe "had access to Pur360's confidential information, trade secrets, financial documents, client lists, and technological know-how." (*Id*. at ¶ 20). To protect its this information and its competitive advantage, Pur360 had Kolbe sign an Offer of Employment, Confidentiality & Non-Disclosure Agreement, and Employee Confidentiality and Non-Competition Agreement on September 12, 2018. (*Id*. at ¶ 21). Kolbe consented to a non-disclosure provision providing:

> [Kolbe] agrees to treat the Confidential Information as confidential after the effective date of this Agreement, and [to] not, during the term of his employment or at any time thereafter, without the prior written authorization of CZS: (a) reveal or disclose the Confidential Information,

or any part thereof, to any third party; or (b) use the Confidential
Information for his own benefit or for the benefit of any third party.

(*Id*. at ¶ 24). The documents also obligated Kolbe to assign "on an ongoing basis . . . to CZS all copyrights, patents, inventions, trade secrets and/or know-how in any device, method, article of manufacture, data, software, idea, information, work, source identifier, and/or form relating to the business of CZS . . . that [Kolbe] in any way contributes to, develops or assists in developing . . . ." (*Id*. at ¶ 25). He further agreed to non-competition and non-solicitation obligations preventing him from "engag[ing] in business for [his] own account or as an agent, salesman, employee or contractor of any other person, firm or entity, in the marketing of a device similar to the Business" or "contact[ing] or solicit[ing] any Existing Customer or Prospective Customer of CZS for the purpose of causing any such Existing Customer or Prospective Customer, to cease doing, or to not do business with CZS" for five years after his termination. (*Id*. at ¶ 27). Pur360 claims to have fully compensated Kolbe for his employment. (*Id*. at ¶¶ 30–33).

Despite agreeing to the restrictive covenants in his employment agreement, after his resignation from Pur360 on March 6, 2020, Kolbe created a competing company, ARKO, and began working as its CEO. (*Id*. at ¶ 34). ARKO has its principal office in Tampa, Florida. (*Id*.) On March 31, 2020, Kolbe created a website for ARKO describing the company as "a residential and commercial service company specializing in ozone and UVC disinfection." (*Id*. at ¶ 36). The website further represents that ARKO "disinfect[s] and significantly reduce[s] the count of mold spores, bacteria and viruses to safe levels using our empirical scientific background and precise protocols" and that its mission is to "safely and effectively provide superior ozone and UV

disinfection technology to the public for the benefit of people, communities and businesses." (*Id*. at ¶ 37).

Pur360 filed suit in November 2020 and the instant amended complaint in January 2021, claiming Kolbe and ARKO misappropriated its trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, and Illinois Trade Secrets Act, 735 ILCC § 1065, *et seq.* (*Id*. at ¶¶ 38, 41–58). Pur360 further claims Kolbe breached his employment agreement by creating a competing business, disclosing and using Pur360's confidential information, and soliciting actual and prospective Pur360 customers in violation of the restrictive covenants in the agreement. (*Id*. at ¶¶ 59–75).

## II. Kolbe's Counterclaim

On December 18, 2020 Kolbe filed a counterclaim against Pur360 for breach of contract and equitable accounting. (Dkt. 10). [1] Kolbe claims Pur360 promised to pay him commissions and annual bonuses "per a written schedule set forth in an offer of employment," but did not do so. (*Id*. at ¶¶ 2, 5). According to the schedule, Pur360 "was obligated to pay commission to Kolbe on gross revenues per sale in the amount of 10% on each new sale and 3% on recurring sales from existing customers." (*Id*. at ¶ 3). Further, Pur360 agreed to pay Kolbe an annual bonus calculated as follows: "2% on annual gross revenue between $300,000 and $399,999; 2.5% on annual gross revenue between $400,000 and $499,999; and 3% on annual gross revenue over $500,000." (*Id*. at ¶ 4).

Kolbe further claims Pur360's President, Mr. Khoshbin, "made numerous promises and inducements to Kolbe in order to convince him to accept employment with" Pur360, namely that Kolbe "would receive shares in the company, expansion into a new advisory board position which would include compensation, as well as elevation to regional and/or director level positions as the

---

[1] Kolbe also alleged a claim pursuant to the Illinois Sales Representative Act, 820 ILCS § 120/1. (Dkt. 10 at ¶¶ 24–31). Kolbe has agreed to voluntary dismiss this claim and the Court does not address it herein. (Dkt. 16 at 13).

organization grew." (*Id*. at ¶¶ 17–18). Kolbe relied on these statements when he accepted employment with Pur360, but Pur360 never followed through on them. (*Id*. at ¶¶ 19, 21).

## LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim, the Court must construe the complaint "in a light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in the non-moving party's favor." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff need not plead "detailed factual allegations," but the short and plain statement must "give the defendant fair notice of what … the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain sufficient factual matter that when "accepted as true … 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)). The legal standard for a motion to dismiss a counterclaim is the same as that applied to a motion to dismiss a complaint. *See Cozzi Iron*, 250 F.3d at 574.

## DISCUSSION

### I. Defendants Motion to Dismiss Pur360's Complaint

#### A. Counts I and II: Trade Secret Misappropriation

Pur360 alleges Kolbe and ARKO improperly used and disclosed its trade secrets in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, and Illinois Trade Secrets Act ("ITSA"), 735 ILCC § 1065, *et seq.* Both statutes require Pur360 to plausibly allege the existence of a trade secret and that it was used, disclosed, or otherwise misappropriated by Defendants. *Id*.

5

Defendants argue Pur360's claims should be dismissed because the allegations in the FAC are premised "upon information and belief" rather than on claims that Defendants did in fact use or disclose trade secrets. Defendants claim "this Court must interpret [the] plain meeting [sic] [of this phrase] that Plaintiff suspects, but has no proof, of any action by Defendants." (Dkt. 25 at 1–2). Beyond general caselaw reflecting the legal standard for a motion to dismiss, however, Defendants do not cite a single case in support of the conclusion that allegations based "upon information and belief" are inherently speculative. To the contrary, allegations premised on "information and belief" are permissible "[w]here the pleadings concern matters peculiarly within the knowledge of the defendants…." *Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005) (internal quotations and citation omitted); *Shales v. Schroeder Asphalt Servs., Inc.*, No. 12 C 6987, 2013 WL 2242303, at n.1 (N.D. Ill. May 21, 2013) (Kendall, J.) ("*Twombly and Iqbal* do not affect the holding in *Brown* that allegations can be pled on information and belief.").

Here, without access to ARKO's records, Pur360 has no way of knowing what information Kolbe disclosed and is using as part of ARKO's competing business model. In such circumstances, courts allow trade secret misappropriation claims to survive on a theory of "inevitable disclosure," which allows a plaintiff to "prove a claim of trade secret misappropriation by demonstrating that defendant's new employment will inevitably lead him to rely on the plaintiff's trade secrets." *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1269 (7th Cir. 1995); *Strata Mktg., Inc. v. Murphy*, 740 N.E.2d 1166, 1178 (Ill. App. Ct. 2000) ("*PepsiCo* correctly interprets Illinois law…."). [2] "[C]ourts consider: "(1) the level of competition between the former employer and the new employer; (2)

---

[2] "Although the Seventh Circuit has permitted inevitable disclosure claims under the ITSA, it has not explicitly allowed them under the DTSA. Other courts in this district, however, have analyzed inevitable disclosure under both laws, which suggests that the doctrine is available in either context." *Packaging Corp. of America, Inc. v. Croner*, 419 F. Supp. 3d 1059, 1069 n.7 (N.D. Ill. 2020) (citing *Indus. Packaging Supplies, Inc. v. Channell*, 2018 WL 2560993 (N.D. Ill. 2018); *Molon Motor & Coil Corp. v. Nidec Motor Corp.*, 2017 WL 1954531 (N.D. Ill. May 11, 2017); *General Electric Co. v. Uptake Techs., Inc.*, 394 F. Supp. 3d 815, 834 (N.D. Ill. 2019) ("Consistent with other courts in this district, this Court finds that a DTSA claim based on inevitable disclosure may survive a motion to dismiss.").

whether the employee's position with the new employer is comparable to the position he held with the former employer; and (3) the actions the new employer has taken to prevent the former employee from using or disclosing trade secrets of the former employer." *Gen. Elec. Co. v. Uptake Techs., Inc.*, 394 F. Supp. 3d 815, 833 (N.D. Ill. 2019). A complaint is insufficient if "'[a]ll that is alleged, at bottom, is that defendants *could* misuse plaintiff's secrets, and plaintiffs fear they will.'" *PepsiCo*, 54 F.3d at 1268–69 (quoting *Teradyne, Inc. v. Clear Communications Corp.*, 707 F.Supp. 353 (N.D. Ill. 1989)) (emphasis added).

First, ARKO's website plausibly establishes it is in direct and significant competition with Pur360's property eradication business in Florida. Pur360 develops and manufactures ultra-violet ozone generators for use in eradicating mold, bacteria, viruses, and their resulting odors from commercial and residential properties. (Dkt. 14 at ¶ 1). ARKO's website states it "is a residential and commercial service company specializing in ozone and UVC disinfection" and that it "disinfect[s] and significantly reduce[s] the count of mold spores, bacteria and viruses to safe levels using our empirical scientific background and precise protocols." (*Id*.) The symmetry of these descriptions and the fact that ARKO and Pur360 operate in the same geographical area makes it plausible that ARKO is a serious competitor of Pur360.

Next, Kolbe served as regional manager at Pur360, a position in which he "had access to Pur360's confidential information, trade secrets, financial documents, client lists, and technological know-how (*Id*. at ¶¶ 5, 20). Kolbe now serves as ARKO's CEO, a comparable position. (*Id*. at ¶ 34). While "the mere fact that a person assumed a similar position at a competitor does not, without more, make it 'inevitable that he will use or disclose ... trade secret information[,]'" *PepsiCo*, 54 F.3d at 1269 (quoting *AMP Inc. v. Fleischhacker*, 823 F.2d 1199 (7th Cir.1987)), Kolbe did not just take a comparable position at a competitor. He *created* a competing

7

business in the same geographical area he once oversaw while at Pur360. Further, Pur360 alleges Kolbe had never worked in the property eradication business prior to his employment at Pur360, making it plausible that *all* of Kolbe's specialized knowledge regarding property eradication services comes from Pur360. Under these circumstances, "unless [Kolbe] possessed an uncanny ability to compartmentalize information, he would necessarily be making decisions about [ARKO] by relying on his knowledge of [Pur360's] trade secrets. *PepsiCo*, 54 F.3d at 1269. Finally, as Kolbe is the one who created ARKO and currently acts as its CEO, it is unlikely he has taken steps to prevent himself from disclosing Pur360's trade secrets.

All three factors support the circumstantial inference that Kolbe used/uses and disclosed/discloses trade secrets when creating and operating ARKO under a theory of inevitable disclosure. The FAC's allegations are thus sufficient to state claims for trade secret misappropriation under federal and Illinois law.

### B. Count III: Breach of Contract

To state a breach of contract claim under Illinois law, Pur360 must allege (1) the existence of a valid and enforceable contract; (2) the plaintiff's performance of the contract; (3) the defendant's breach of the contract; and (4) resulting injury. *Sherman v. Ryan*, 911 N.E.2d 378, 397 (Ill. App. Ct. 2009). As with the claims for trade secret misappropriation, Kolbe and ARKO argue the breach of contract claim should be dismissed because the allegations are premised "upon information and belief." Once again, the mere fact that allegations are based on "information and belief" is not fatal to Pur360's claims; the decisive inquiry is whether those allegations along with others state, a plausible claim for relief. *See e.g.*, *Shales*, 2013 WL 2242303, at *4 (citing *Brown*, 398 F.3d at 914).

8

Here, Pur360 plausibly alleges Kolbe breached his employment agreement. The FAC states Kolbe signed an employment agreement and other related documents when he first accepted employment and that Pur360 complied with its obligations under that agreement by compensating Kolbe. (Dkt. 14 at ¶¶ 21, 30–33). As discussed above, the FAC states that as regional manager Kolbe had access to Pur360's trade secrets and other confidential information and that he used and disclosed that information in the creation and operation of a competing business. (*Id*. at ¶¶ 20, 38, 41–58). These actions plausibly violate the non-disclosure and non-competition obligations in his employment agreement. (*See id*. at ¶¶ 24, 26). Further, because ARKO operates in Tampa, Florida—the same geographical area Kolbe oversaw as Pur360's regional manager—it is plausible that in starting a new competing business, Kolbe has solicited actual or potential Pur360 customers in violation of his non-solicitation obligations. (*See id*. at ¶¶ 27, 35). Finally, Pur360 claims Kolbe and ARKO's actions have "cause[d] irreparable damage to [its] reputation, and result[ed] in lost sales and business opportunities." (*Id*. at ¶ 8). The FAC adequately states a claim for breach of contract. Defendants' motion to dismiss the FAC is denied.

## II. Pur360's Motion to Dismiss Kolbe's Counterclaim

### A. Count I: Equitable Accounting

"An equitable accounting is an adjustment of the accounts of the parties and a rendering of the balance ascertained to be due." *Melikhov v. Drab*, No. 16 C 9332, 2017 WL 3234808, at *7 (N.D. Ill. July 31, 2017) (internal quotations and citation omitted). Kolbe requests an accounting to determine the amount of bonuses and commissions Pur360 has allegedly failed to pay him. (Dkt. 10 at ¶¶ 7–15). To state a claim for an accounting, Kolbe must allege the "absence of an adequate remedy at law" and "at least one of the following: (1) a breach of a fiduciary relationship, (2) a need for discovery, (3) fraud, or (4) the existence of mutual accounts which are of a complex

9

nature." *Kempner Mobile Elecs., Inc. v. Southwestern Bell Mobile Sys.*, 428 F.3d 706, 715 (7th Cir. 2005) (citing *Mann v. Kemper Fin. Cos., Inc.*, 618 N.E.2d 317, 327 (Ill. App. Ct. 1992)). Even when these prerequisites have been satisfied, a "district court has broad discretion in deciding whether an accounting is appropriate." *ABM Marking, Inc. v. Zanasi Fratelli, S.R.L.*, 353 F.3d 541, 545 (7th Cir. 2003) (internal quotation marks omitted); *see also First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985) ("Because an accounting is an equitable remedy, a court has broad discretion to determine whether it is appropriate to order an accounting.").

Generally, where a party pleads a claim for breach of contract, an equitable accounting claim must be dismissed. *See e.g., Drake Enterprises, Inc. v. Colloid Env't Techs. Co.*, No. 08 C 6753, 2009 WL 1789355, at *3 (N.D. Ill. June 24, 2009) (collecting cases). Here, however, because Kolbe fails to state a claim for breach of contract, as explained below, the Court assumes he lacks an adequate remedy at law and proceeds to assess whether Kolbe pleads one of the remaining factors.

Kolbe claims Pur360 "owed a fiduciary relationship to Mr. Kolbe by virtue of its ability to exercise discretion over whether Kolbe would be paid commissions and/or bonuses and for which specific sales." (Dkt. 10 at ¶ 7). He fails, however, to cite caselaw in support of that proposition. To the contrary, an employer-employee relationship typically does not create a fiduciary duty under Illinois law. *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 455 (7th Cir. 2012) (citing *Hytel Group, Inc. v. Butler*, 938 N.E.2d 542, 548 (Ill. App. Ct. 2010)).

Next, the information Kolbe seeks in his accounting claim will likely be revealed through discovery. To succeed on its breach of contract claim against Kolbe, Pur360 must prove it has complied with its obligations to pay Kolbe sufficient bonuses and commission in accordance with

10

the employment agreement. This will require Pur360 to produce financial information regarding its gross revenues, which is necessary to calculate the amount it owed Kolbe. Thus, discovery is not needed independent of Pur360's claims. Finally, Kolbe does not allege the existence of fraud or mutual accounts. Kolbe fails to adequately allege a claim for equitable accounting. Count I of his counterclaim is therefore dismissed.

### B. Count II: Breach of Contract

Kolbe claims Pur360 breached its promise to provide him with (1) adequate commissions and bonuses and (2) shares in the company and an advisory board position. (Dkt. 10 at ¶¶ 17–23). Kolbe maintains his claims are not premised on the employment agreement that is referenced in Pur360's FAC, but rather on an earlier offer conveyed by Pur360's President Zak Khoshbin in an email attached to his response brief. (Dkt. 16 at 16–17, Ex. 1). For the purposes of this motion, the Court accepts Kolbe's representation and considers the email on the grounds that it is referenced in the counterclaim and central to Kolbe's claims. *See Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018). Khoshbin's email to Kolbe, dated July 2, 2018, states:

> I am excited to submit an offer to you to become a part of Pur360!
>
> As you know, we are a startup company and self funded, but we have put together a competitive offer that allows bonus and commission opportunities for you. With our current structure, this is not a normal 9-5 job. We are growing quickly and we work when ever [sic] it is needed. This can include weekends as well as odd hours of the day. Regardless of everyones [sic] job title right now, we are all required to do a little bit of everything. This would include inspections at properties, setting up the jobs, taking down jobs, setting up mold tests, and even answering calls. When the time is right, we will hire an additional person to be trained to work under you.
>
> The proposal is attached. Please let us know if you have any questions or comments. We look forward to hearing back from you.

(Dkt. 16 at Ex. 1). The email continues to describe a schedule of bonuses and commissions.

Khoshbin's email cannot form the basis for Kolbe's breach of contract claims. To reiterate, "[t]he elements of a cause of action for breach of a contract, whether oral or written, include the existence of a valid and enforceable contract, performance by the plaintiff, breach of the contract by the defendant, and resultant damages or injury to the plaintiff." *Sheth v. SAB Tool Supply Co.*, 990 N.E.2d 738, 754 (Ill. App. Ct. 2013) (internal quotations and citation omitted). A valid contract is premised on offer, acceptance, and consideration. *Id*. Kolbe's email does nothing more than convey an "offer" or a "proposal" for employment that Kolbe is free to accept or deny. It is not a contract. Moreover, while the email addresses bonuses and commissions, it fails to mention altogether a promise to convey shares or an advisory board position.

Even if Kolbe's claims are assessed independently of Khoshbin's email, they cannot survive. First, assuming there is a valid agreement regarding the amount of bonuses and commissions Kolbe is owed [3], Kolbe's claim that Pur360 failed to pay him an adequate amount of such payments is unsupported by any factual allegations. Kolbe explains in his response brief that he "does have an idea [of Tampa revenue] which is why he believes he was underpaid[,]" but he fails to allege facts supporting such a theory in his counterclaim. (Dkt. 16 at 12). *See Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012) ("It is a "basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). If Kolbe's allegations were deemed sufficient, any employee could sue his employer alleging he was underpaid in the hopes that discovery will reveal he in fact was underpaid.

---

[3] Pur360 provided a copy of the employment agreement Kolbe signed on September 12, 2018 that is referenced in Pur360's complaint for this Court's review. (Dkt. 13 at Ex. A). While the Court does not rely on it in making its determination, as it is extrinsic to Kolbe's counterclaim, the Court observes that it embodies the commissions and bonus provisions Khoshbin offered to Kolbe in his July 2, 2018 email. (*Id.*) Thus, despite Kolbe's insistence that the September 2018 employment agreement is not the basis for his claims, it does provide some support for his breach of contract claim regarding Pur360's obligation to pay him a certain amount in bonuses and commissions.

Regarding the claims premised on shares and an advisory board position, the counterclaim can also be read, in the light most favorable to Kolbe, to allege the existence of an oral contract between Pur360 and Kolbe. (*See* Dkt. 10 at ¶ 18) ("CZS through Khoshbin, promised Kolbe that he would receive shares in the company, expansion into a new advisory board position which would include compensation, as well as elevation to regional and/or director level positions as the organization grew."). Even analyzed in this manner, however, Kolbe fails to plead the existence of a valid contract. "[U]nder Illinois law, oral employment contracts are viewed more skeptically than written ones. To be enforceable, an oral contract must contain terms which are definite and certain." *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996) (citation omitted). Beyond stating that Khosbhin made such a promise, Kolbe fails to allege the terms of any oral contract promising to convey shares or promote him to an advisory board position. We do not know when Kolbe would receive the shares or promotion, on what conditions he would receive them, what additional compensation he would receive, or what consideration Kolbe provided to secure this alleged deal, among other terms. *See e.g.*, *Zemke*, 100 F.3d at 513 (affirming dismissal of breach of oral contract claim where complaint failed to allege start date, salary, and other terms); *Shelton v. Ernst & Young, LLP*, 143 F. Supp. 2d 982, 992 (N.D. Ill. 2001) (dismissing breach of oral contract claim where plaintiff failed to plead the duration of the agreement or adequate consideration); *Baxi v. Ennis Knupp & Assocs., Inc.*, No. 10-CV-6346, 2011 WL 3898034, at *9 (N.D. Ill. Sept. 2, 2011) (dismissing breach of oral contract claim where plaintiff failed to plead the terms of the oral contract).

As Kolbe fails to state a claim for breach of contract, Count II of Kolbe's counterclaim is also dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Pur360's First Amended Complaint [18] is denied and Pur360's motion to dismiss Kolbe's counterclaim [13] is granted. Kolbe's counterclaim is dismissed in its entirety without prejudice. Kolbe may amend his counterclaim consistent with this opinion within 21 days.

_____
Virginia M. Kendall
United States District Judge

Date: May 7, 2021