THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Arpad Kolbe, | ) |
|     *Counter-Plaintiff*, | ) ) ) |
|     v. | )   No. 20 C 6886 ) )   Judge Virginia M. Kendall |
| CZS Holdings LLC (d/b/a Pur360), | ) ) |
|     *Counter-Defendant.* | ) |

**MEMORANDUM OPINION AND ORDER**

Counter-Plaintiff Arpad Kolbe brings a counterclaim for breach of contract against his former employer, CZS Holdings LLC d/b/a Pur360 ("Pur360"). Pur360 moves for partial dismissal of the First Amended Counterclaim for Breach of Contract.[1] (Dkt. 31). For the following reasons, Pur360's Motion to Dismiss is granted.

**BACKGROUND**

On November 20, 2020, Pur360 filed suit against Kolbe for trade secret misappropriation and breach of contract. (Dkt. 1). Kolbe then filed counterclaims against Pur360 for equitable accounting, breach of contract, and violations of the Illinois Sales Representative Act, 820 ILCS § 120/1. (Dkt. 10.) This Court dismissed Kolbe's original counterclaims without prejudice (Dkt. 10), and Kolbe filed an amended counterclaim for breach of contract. (Dkt. 29).[2]

---

[1] Pur360 does not move to dismiss Kolbe's counterclaim based on underpayment of bonuses. (Mot. at 8).

[2] The amended counterclaim and Kolbe's opposition to the instant motion were not signed as required by Federal Rule of Civil Procedure 11(a). Any future pleadings or briefing submitted without signature will be stricken. Fed. R. Civ. P. 11(a).

1

The following factual allegations are taken from Kolbe's First Amended Counterclaim ("FACC") and assumed true for the purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016); *Cozzi Iron & Metal, Inc. v. U.S. Office Equip, Inc.*, 250 F.3d 570, 574 (7th Cir. 2001).

Kolbe alleges that prior to accepting employment with Pur360, he and Pur360 engaged in negotiations in which oral and written proposals were traded between the parties. (FACC at ¶¶ 8, 10). During those negotiations, according to Kolbe, part of his compensation plan was reduced to writing, but the remainder of the agreement remained oral. (*Id.* at ¶¶ 16, 17). Kolbe claims Pur360 agreed to pay him "commissions on gross sales revenues per sale and annual bonuses on gross sales revenues per year" per a written schedule set forth in an offer of employment. (*Id.* at ¶ 20). In accordance with the oral agreement and written schedule, Pur360 "was obligated to pay commission to Kolbe on gross revenues per sale in the amount of 10% on each new sale and 3% on recurring sales from existing customers." (*Id.* at ¶ 21). Further, Kolbe was entitled to annual bonuses calculated as follows: "2% on annual gross revenue between $300,000 and $399,999; 2.5% on annual gross revenue between $400,000 and $499,999; and 3% on annual gross revenue over $500,000." (*Id.* at ¶ 22). Moreover, Pur360 allegedly agreed to increase Kolbe's base pay and commission rate "if Tampa revenue exceeded $300,000.00." (*Id.* at ¶¶ 28, 29).

In addition, Kolbe also claims that Pur360's President Zak Khoshbin "promised Kolbe that he would receive shares in the company, expansion into a new advisory board position which would include compensation, as well as elevation to regional and/or director level position." (*Id.* at ¶ 23.) Kolbe accepted employment with Pur360 in reliance upon Khoshbin's representations and the expectation that he would receive commissions and bonuses. (*Id.* at ¶¶ 30, 31). Kolbe claims that Pur360 failed to abide by the commission and bonus agreement and the representations

regarding the issuance of ownership shares and appointment to an advisory board and higher-level position. (*Id.* at ¶¶ 31, 33, 34, 43.)

## LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim, the Court must construe the complaint "in a light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in the non-moving party's favor." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff need not plead "detailed factual allegations," but the short and plain statement must "give the defendant fair notice of what … the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain sufficient factual matter that when "accepted as true … 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)).

The Seventh Circuit interprets this plausibility standard to mean that the plaintiff must "give enough details about the subject-matter of the case to present a story that holds together." *Vansant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *West Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 676 (7th Cir. 2016) (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011); *Iqbal*, 556 U.S. at 678). The legal standard for a motion to dismiss a counterclaim is the same as that applied to a motion to dismiss a complaint. *See Cozzi Iron*, 250 F.3d at 574.

## **DISCUSSION**

To state a breach of contract claim under Illinois law, a plaintiff must plead (1) the existence of a valid and enforceable contract; (2) the plaintiff's performance of the contract; (3) the defendant's breach of the contract; and (4) resulting injury. *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786 (7th Cir. 2015) (citing *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. Ct. 2004)). Here, Kolbe's breach of contract claim fails for two principle reasons. First, Kolbe fails to plead the existence of an oral contract related to the issuance of ownership shares and appointment to an advisory board and higher-level position. Second, Kolbe does not plausibly allege that he was underpaid sales commissions. Accordingly, Pur360's Motion to Dismiss is granted.

### A. The "Executed Agreement" and Parol Evidence Rule

As an initial matter, Pur360 argues that Kolbe's counterclaim should be dismissed either because an integration clause in an alleged employment agreement between the parties precludes it, or because Kolbe's allegations of a part-written contract preclude consideration of the oral terms. Both arguments fail.

First, Pur360 points to a clause in a September 12 employment agreement (the "Executed Agreement") it attached to its own pleadings in this case and to its original motion to dismiss that states that it is "the complete agreement between" the parties. (Mot. at 3). Because of this agreement, Pur360 argues, Kolbe cannot base his claims on oral promises. Kolbe argues that the Executed Agreement is not the basis of his claim and so the Executed Agreement cannot be considered at this stage without conversion of the motion to summary judgment. (Dkt. 36 at 10). The cases that Pur360 cites in its Motion are generally directed to situations where the document at issue is attached to the pleading that is being challenged by a motion to dismiss. *See e.g., Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (affirming dismissal of plaintiff's claims

under Rule 12(b)(6) based on documents cited in plaintiff's complaint). The situation here – that the Executed Agreement was attached to plaintiff's complaint while the defendant's counterclaim is being challenged – is not on all fours with those cases.

A court may consider a document that is attached to a motion to dismiss without converting the motion to a motion for summary judgment if the document is referred to in the plaintiff's complaint and central to his claim. *Wright v. Assoc. Ins. Cos. Inc.,* 29 F.3d 1244, 1248 (7th Cir.1994). However, this allowance only extends "so long as the authenticity of the document is unquestioned." *Minch v. City of Chicago*, 486 F.3d 294, 300 n.3 (7th Cir. 2007) (citing *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)); s*ee also Tierney v. Vahle*, 304 F.3d 734, 739 (7th Cir. 2002) ("What would not be cricket would be for the defendant to submit a document in support of his Rule 12(b)(6) motion that required discovery to authenticate or disambiguate; in such a case the judge would be required to convert the defendant's motion to a Rule 56 motion if he were minded to consider the document in deciding whether to grant the motion."). Because Kolbe appears to contest the authenticity of the Executed Agreement (or at the very least, does not admit the authenticity), the Executed Agreement will not be considered at this stage. (Resp. at 9).

Pur360 argues that even if the Executed Agreement does not control, Illinois' parol evidence rule still precludes consideration of Kolbe's claims of an oral agreement. (Mot. at 9-10). *See Barille v. Sears Roebuck & Co.*, 682 N.E.2d 118, 123 (Ill App. Ct. 1997) ("It is well settled under the doctrine of merger and the parol evidence rule that a written agreement which is complete on its face supersedes all prior agreements on the same subject matter and bars the introduction of evidence concerning any prior term or agreement on that subject matter.") Pur360's position is that, because Kolbe has pled that there was a writing that addressed his compensation, any additional claims of compensation – including shares, an advisory board, or elevation – cannot be

considered. (Mot. at 9-10). However, application of the rule requires the written agreement pled by Kolbe to be "complete on its face." *See, e.g., Barille*, 682 N.E.2d at 123. Kolbe has not attached a written agreement to his counterclaim nor made adequate factual allegations explaining the agreement in enough detail to conclude that agreement is complete on its face, and so allegations of other oral agreements on the subject of his employment and compensation are not precluded based on Kolbe's allegations of a written agreement.

### B. Allegations of a "Part-Written" Contract

While Kolbe's allegations of a part-written contract are light enough to dodge the parol evidence rule, that same lack of factual description dooms his claim that part of his agreement with CZS was written.

Kolbe alleges that part of the contract between the parties was written and makes mention of a "schedule" several times in his FACC. (FACC at ¶¶ 16-17, 20). But he never identifies that schedule, does not explain when or how it was executed, or provide any other factual allegations to sustain his claim that there was a part-written contract between the parties. As Pur360 points out (Reply at 2), if there is a writing out there, Kolbe has not identified it or provided factual detail to support that claim, and so has not provided Pur360 adequate notice as required by Rule 8(a).[3] *See Twombly,* 550 U.S. at 555 (The allegations must "give the defendant fair notice of what … the claim is and the grounds upon which it rests.") Leaving CZS to guess what writing Kolbe is referring to does not meet the pleading standard set by *Twombly*. While Kolbe alleges that this written schedule was agreed to orally between the parties, (FACC at ¶ 20) that is a legal conclusion that is not entitled to the presumption of truth on a 12(b)(6) motion to dismiss. *See Iqbal*, 556 U.S.

---

[3] This "writing" is not the Executed Contract (Resp. at 8), nor does Kolbe specifically identify it as the July 2018 email attaching a schedule that the Court has already ruled was not a contract (Dkt. 28 at 12 (The email attaching the schedule "cannot form the basis for Kolbe's breach of contract claims… it is not a contract.")

at 678 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.")

### C. Allegations of Oral Contract

#### 1. Ownership Shares, Advisory Board Position, and Higher-Level Position

Regarding Kolbe's claim of an oral contract entitling him to ownership shares in Pur360 and appointment to an advisory board and higher-level position, Kolbe fails to plead the existence of a valid and enforceable contract. Under Illinois law, oral employment contracts are viewed more skeptically than written ones. *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996). To plead the existence of an enforceable oral contract, a plaintiff must establish offer, acceptance, consideration, and definite and certain terms. *See id.* ("[t]o be enforceable, an oral contract must contain terms which are definite and certain."). *See, e.g.*, *Britton v. ITT Technical Inst.*, No. 13-cv-6547, 2014 WL 1568684, at *4 (N.D. Ill. Apr. 17, 2014) ("[t]o plead the elements of an enforceable oral contract, Plaintiff must establish … definite and certain terms of the contract.")

Here, Kolbe's FACC does not provide terms that are definite or certain. Beyond stating that "[t]he ownership shares and the position were … to be provided after the first year" and that "the position on the technical advisory board … would have enabled Kolbe to provide information to the Plaintiff," almost all aspects of the oral contract remain unclear. (Dkt. 29 at ¶ 24, 36.) We do not know, for instance, how many ownership shares Kolbe was entitled to, under what conditions those shares would vest, under what conditions Kolbe would be appointed to the advisory board, or anything about the regional and/or director level position. There are also zero factual allegations to identify when the oral offer and acceptance took place – important facts to plausibly allege because Kolbe has alleged that the parties "traded proposals both orally and in writing." (FACC ¶ 10). The terms of the alleged oral contract are therefore too vague and indefinite to support the existence of an oral contract guaranteeing Kolbe ownership shares in

Pur360, appointment to an advisory board, and a higher-level position. *See e.g.*, *Zemke*, 100 F.3d at 513 (affirming dismissal of breach of oral contract claim where complaint failed to allege start date, salary, and other terms); *Shelton v. Ernst & Young, LLP*, 143 F. Supp. 2d 982, 992 (N.D. Ill. 2001) (dismissing breach of oral contract claim where plaintiff failed to plead the duration of the agreement or adequate consideration).

### B. Underpaid Sales Commissions

Kolbe also fails to make factual allegations regarding his entitlement to commissions that plausibly suggest he is entitled to relief. As Pur360 argues, the factual basis for Kolbe's claim lies entirely in Pur360's Tampa office having revenues that exceeded $356,000.00 in the first year of Kolbe's employment and Kolbe's observations of the work being done in the Tampa region.[4] (Mot. at 13-14). Kolbe responds that his allegations are based on his personal observations and that once he obtains Pur360's financial records, he will be able to establish that he was underpaid. (Resp. at 10-11). He argues that "[i]t is plausible that a company refused to pay commission to an employee," (Resp. at 11) which of course as a general matter is true. However, Kolbe needed to provide "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (citation omitted). As such, Kolbe's speculative and conclusory statements are insufficient to plausibly state a claim for relief.

Kolbe alleges that "[t]he parties orally agreed that [Pur360] would pay to Kolbe commissions on gross sales revenues per sale … as per a written schedule set forth in an offer of employment from [Pur360] to Kolbe." (FACC at ¶ 20.) He further states, "[p]ursuant to the oral

---

[4] of the September 12 agreement, the Court will not consider its impact on Kolbe's counterclaims at this time.

agreement and according to the schedule, [Pur360] was obligated to pay commission to Kolbe on gross revenues per sale in the amount of 10% on each new sale and 3% on recurring sales from existing customers." (*Id.* at ¶ 21.) Even assuming the existence of a valid and enforceable contract, Kolbe fails to allege sufficient facts showing its plausible that Pur360 breached its contractual obligations. The FACC plainly states that Kolbe would receive 10% on new sales and 3% on recurring sales. (*Id.*) Moreover, Kolbe states in his response to Pur360's Motion to Dismiss that his compensation package was "tied both to his sales and to total revenue." (Resp. at 10.) Yet the FACC is devoid of any facts related to Kolbe's own sales. Kolbe's only non-conclusory allegation regarding being underpaid commissions is that the Tampa office had revenue in excess of $356,000.00 in Kolbe's first year. (FACC at ¶ 32, 34.) Nonetheless, this fact alone is insufficient to state a plausible claim for relief because it does not evidence the number of new or recurring sales that Kolbe made while employed at Pur360. Even viewed in a light most favorable to Kolbe, it is conclusory and speculative to believe that Kolbe was underpaid commissions from the facts that Kolbe has provided. *See e.g.*, *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 616-17 (7th Cir. 2019) (affirming dismissal of breach of contract claim where plaintiff failed to provide sufficient facts to allow a reasonable inference of breach); *Prewett Enters., Inc. v. Grand Trunk W. R.R. Co.*, No. 18-cv-04254, 2019 WL 6310495, at *9 (dismissing breach of contract claim where plaintiff failed to plead facts plausibly establishing the alleged breach).

## **CONCLUSION**

For the foregoing reasons, Kolbe's First Amended Counterclaim is dismissed to the extent it alleges a breach by Pur360 for not giving Kolbe ownership shares in the company, appointing him to an advisory board, elevating him to a regional and/or director level position, or properly

paying commissions. Kolbe's counterclaim with respect to the payment of bonuses (which was not challenged by Pur360) survives.

_____
Virginia M. Kendall
United States District Judge

Date: October 19, 2021